Mr. Chief Justice Brantly and Mr. Justice Sanner concur.

---

ST. PAUL MACHINERY MFG. CO., Respondent, *v.* BRUCE
ET AL., Appellants.

(No. 3,887.)

(Submitted March 11, 1918.   Decided April 13, 1918.)

[172 Pac. 330.]

*Partnership — Evidences of Existence — Formation — Intent—
Common Property—Profit-sharing—Sales—Failure of Con-
sideration—Breaches of Warranty.*

Appeal and Error—Directed Verdict—Question Determinable.
1.   Where a judgment is based on a directed verdict, the question on appeal is, not whether the inferences necessary to maintain the court's action are permissible from the evidence, but whether they are commanded by it.

Partnership—Evidence—Insufficiency—Directed Verdict—Error.
2.   Evidence *held* sufficient to permit the inference of the existence of a partnership, but insufficient to command such inference, and that therefore the court erred in directing a verdict in favor of plaintiff, who sought to hold defendants as copartners for the cost price of farming machinery.

Same—Formation—Intent.
3.   No one who has not held himself out as a partner is liable as such unless he is a partner in fact, and whether he is such in fact is a question of intent.

Same—Presence or Absence of Term "Partnership" in Agreement—Effect.
4.   Though the use of the word "partnership" in an agreement by individuals to enter into a common enterprise is not decisive, its presence or absence is evidence of considerable value in determining the relationship intended to be created.

Same—Common Property—Right of Disposition.
5.   Where none of the persons alleged to have constituted a farming partnership had any power to dispose of the interests of the others in the land intended to be farmed, such land could not constitute the partnership fund or common property.

Same—Profit-sharing.
6.   Profit-sharing is persuasive of the existence of a partnership.

   [As to when agreements to share profits do not create partnership, see note in 30 Am. St. Rep. 828.]

Sales—Failure of Consideration—Breaches of Warranty—Availability of Defenses.
7.   The rules that failure of consideration cannot be raised by one who accepts and retains property sold, and that breaches of warranty after acceptance cannot be urged as a defense but only as counterclaims, apply only where the acceptance was unqualified or unconditional.

Pleading—Inconsistent Defenses—Admissibility of Evidence.
8.   Since a defendant may, under section 6549, Revised Codes, interpose illogical or inconsistent defenses, it is error to exclude evidence offered in support thereof.

*Appeal from District Court, Lewis and Clark County in the First Judicial District; R. Lee McCulloch, a Judge of the Fourth District, presiding.*

Action by the St. Paul Machinery Manufacturing Company against A. C. Bruce, E. C. Parker and F. J. Edwards, doing business as the Confederate Creek Farm. Judgment for plaintiff. Defendant Edwards appeals from an order denying him a new trial. Reversed.

*Mr. Edward Horsky* and *Mr. C. W. Wiley*, for Appellant F. J. Edwards, submitted a brief and argued the cause orally.

The contract here involved was in escrow, of an executory nature, and there was to be no sharing of crops or proceeds thereof until Parker and Bruce had performed the conditions of the escrow agreement, *viz.*, paid off the mortgage and all other indebtedness, developed the land and fulfilled all other conditions. An agreement to become partners *in futuro* does not constitute a partnership. A case squarely in point is *Cudahy Packing Co.* v. *Hibou,* 92 Miss. 234, 46 South. 73, 18 L. R. A. (n. s.) 975. (See, also, *State* v. *Mendenhall,* 24 Wash. 12, 63 Pac. 1109; *Hoile* v. *York,* 27 Wis. 209; *Holgate* v. *Downer,* 8 Wyo. 334, 57 Pac. 918; *Davis* v. *Key,* 123 U. S. 79, 31 L. Ed. 112, 8 Sup. Ct. Rep. 55.)

Persons who contribute property or funds for a common object and agree to share the returns are not thereby rendered

partners, as they have no common stock or capital, and no community of interest as principals of and agents for each other in the business. (*Champion* v. *Bostwick*, 18 Wend. (N. Y.) 175, 31 Am. Dec. 376; *Quackenbush* v. *Sawyer*, 54 Cal. 439; *Beecher* v. *Bush*, 45 Mich. 188, 40 Am. Rep. 465, 7 N. W. 785; *McDonnell* v. *Battle House Co.*, 67 Ala. 90, 42 Am. Rep. 99; *Cutler* v. *Winsor*, 6 Pick. (23 Mass.) 335, 17 Am. Dec. 385.) Arrangements for farming on shares are presumed not to create partnerships. (30 Cyc. 369; *Randle* v. *State*, 49 Ala. 14; *Romero* v. *Dalton*, 2 Ariz. 210, 11 Pac. 863; *Smith* v. *Summerlin*, 48 Ga. 425; *Holloway* v. *Brinkley*, 42 Ga. 226; *Shrum* v. *Simpson*, 155 Ind. 160, 49 L. R. A. 792, 57 N. E. 708; *Rose* v. *Buscher*, 80 Md. 225, 30 Atl. 637; *Donnell* v. *Harshe*, 67 Mo. 170.)

The evidence showed conclusively that the machine was worthless and an utter loss. Lawson on Rights and Remedies, section 2264, says: "Total failure of consideration is a good defense to a suit upon a contract." (See *Waldorf* v. *Phillips*, 42 Mont. 80, 111 Pac. 546; *Dickinson* v. *Hall*, 14 Pick. (31 Mass.) 217, 25 Am. Dec. 390; *Harrington* v. *Stratton*, 22 Pick. (39 Mass.) 510, 513.)

A member of an uncommercial partnership, as, for instance, an ordinary partnership, for planting or farming, does not have the power to bind his copartner by making a promissory note in the partnership name. (2 Lawson on Rights & Remedies, sec. 646; *McCrary* v. *Slaughter*, 58 Ala. 230; *Peterson* v. *Armstrong*, 24 Utah, 96, 66 Pac. 767; *Gutheil* v. *Gilmer*, 23 Utah, 84, 63 Pac. 817; *Cavanaugh* v. *Salisbury*, 22 Utah, 465, 63 Pac. 39.)

*Messrs. Day & Mapes*, for Respondent, submitted a brief; *Mr. E. C. Day* argued the cause orally.

MR. JUSTICE SANNER delivered the opinion of the court.

Action by the respondent against "A. C. Bruce, F. C. Parker and F. J. Edwards, partners doing business under the firm name and style of the Confederate Creek Farm," to recover the contract price of a certain tractor sold by the respondent to the

Confederate Creek Farm. Bruce and Parker were not served but issue was joined by the defendant Edwards, who denied the partnership and alleged that the tractor was so deficient as to amount to failure of consideration and to such breaches of warranty as would defeat the right to recover the price. The court directed a verdict for the respondent and against Edwards, and he appeals from an order denying him a new trial. It is to be [1] noticed that since the verdict upon which the judgment stands was a directed one, the question is not whether the inferences necessary to maintain the respondent's case were from the evidence permissible, but whether they were necessary.

1. To support the issue of partnership the respondent presented these facts:

(a) On April 11, 1912, Edwards executed a deed conveying [2] to Bruce and Parker an undivided one-sixth interest in and to certain real estate in Broadwater county, and signed a mutual option contract by which he should be privileged to repurchase said interest or they should be privileged to acquire an additional interest in said property up to "forty per cent" thereof; at the same time an agreement was entered into which recites the existence of said property, the ownership by Bruce and Parker of an undivided one-sixth interest therein and by Edwards of an undivided five-sixths interest therein, the existence upon the land of certain personal property similarly owned, a purpose on the part of "all the owners * * * to develop such property and * * * to farm said lands in a farmerlike manner," and stipulates: that the money "necessary for the contemplated development and operation of said property" shall be borrowed, or raised on mortgage to be executed by Edwards and wife; that all the obligations incurred in such "development and operation" shall be paid before there is any division of profits; that such "development and operation" shall be in charge of Parker, who shall give all his time and best efforts to the enterprise and receive a monthly compensation to be charged to the cost of such "development and operation"; that all machinery, implements and personal property bought

for the "development and operation" of said real estate shall belong thereto and be owned by the parties in proportion to their respective interests therein; that after all obligations are paid, the remainder of the proceeds or profits shall be divided—one-half to Edwards and one-half to Bruce and Parker.

(b) The sum of $6,000 for the carrying out of the project was borrowed from the Union Bank & Trust Company of Helena, upon notes signed by Edwards, Bruce and Parker; thereafter it was ascertained that additional funds to the extent of $2,000 would be needed, making in all $8,000, and it was then agreed that Edwards should obtain the total sum from the Montana Life Insurance Company on mortgage of the real estate executed by Edwards and wife, with which moneys the notes to the Union Bank & Trust Company should be taken up and the balance applied to operating costs, all of which was done; Bruce and Parker had by this time paid the consideration for the deed, but apparently the latter had not been delivered, for the agreements and the deed were on July 22, 1912, placed in escrow with a stipulation that the deed should be delivered upon payment of the mortgage obligation to the insurance company.

(c) The moneys procured for the development and operation of the property were carried in an account at the Union Bank in the name of the Confederate Creek Farm; Parker repaired to the lands and proceeded to carry on operations, plowing, seeding, buying machinery and otherwise going forward with the work; payments for current expense were made by check in the name of the Confederate Creek Farm, by Parker as manager; on two occasions Edwards at Parker's request participated in the conduct of the concern—at one time buying seed potatoes, and at another buying a packer.

(d) On July 24, 1912, Bruce and Parker ordered from the respondent a tractor, agreeing in the name of the Confederate Creek Farm to pay for it; the tractor was sent, tried and retained, but not paid for; the development of the property did not prove a success, and neither Bruce nor Parker returned to the premises after December 19, 1912.

That we have here sufficient of the *indicia* of partnership to permit the inference of its existence cannot be doubted; but whether they command that inference is a different matter, especially when viewed in the light of all the evidence. No one [3] who has not held himself out as a partner is liable as such unless he is a partner in fact (Rev. Codes, sec. 5492), and whether he is such in fact is a question of intent. (*Parchen* v. *Anderson,* 5 Mont. 438, 446, 51 Am. Rep. 65, 5 Pac. 588; *McCormick* v. *Stimson, ante,* p. 272, 169 Pac. 726.) In none of the [4] agreements is the word "partnership" to be found. This, of course, is not decisive, for while an agreement by individuals to enter into a common enterprise does not necessarily create a partnership, even though that term be given to the association by the agreement itself, and while, on the other hand, a partnership may be the nature of an association, even though the parties say in their agreement that such is not their purpose (*Beecher* v. *Bush,* 45 Mich. 188, 193, 40 Am. Rep. 465, 7 N. W. 785, quoted in *Parchen* v. *Anderson, supra*), still the presence or absence of a term so aptly characteristic is evidence of considerable value in determining the relationship intended to be created. Again, the existence of a partnership fund or common [5] property is by no means established in this case beyond debate. Certainly such a fund is not to be seen in the land, as respondent insists, because none of the parties had any power or right of disposition over the interests of the others or beyond their own respective interests, specifically defined. (*Weiss* v. *Hamilton,* 40 Mont. 99, 105 Pac. 74.) Was it in the money raised for the purpose of carrying on the intended operations? The respondent does not so contend, and it is notable that the machinery, implements and other property purchased with it were to "become a part of and belong to" the real estate, the tenure of which excludes the idea of partnership property. Finally, the fact that profits were to be shared is persuasive [6] only. (*Parchen* v. *Anderson, supra; Beasley* v. *Berry,* 33 Mont. 477, 84 Pac. 791; *Flathead County State Bank* v. *Ingham,* 51 Mont. 438, 153 Pac. 1005.) Many agreements exist which

contemplate a division of profits but which are not partnerships. One of these is exhibited in *Flathead County State Bank* v. *Ingham,* just cited, the features of which are not essentially different from those presented here. Indeed, in the absence of any language constituting that mutual agency so necessary to a partnership (*Parchen* v. *Anderson, supra; Croft* v. *Bain,* 49 Mont. 484, 143 Pac. 960), the situation in the two cases is the same; and if we substitute Edwards for Ingham, Bruce and Parker for Jones, and farming for horse-raising, the resemblance is absolute, save for the fact that Ingham honored drafts and thus created the fund to carry on that enterprise, whereas here the fund necessary to conduct the farming operations was ultimately raised by mortgage upon the land, which mortgage— or the indebtedness secured thereby—it was expressly stipulated must be fully paid before any profit-sharing should occur.

Concerning the actions of Edwards to aid the enterprise after it was launched, the evidence is conflicting; but if he did what the respondent asserts, the actions in themselves were colorless, and their significance depends upon the agreements which it is supposed they were designed to forward. The weakness of his case consists in the absence of any definite declaration that he had no intention to form a partnership; but he shows enough to present that attitude; he denies knowledge of the use of the name Confederate Creek Farm to describe any partnership or account; he supposed that when the papers were signed and the moneys procured, that was all he had to do with the matter, and he never went upon the premises which, as he claims, Bruce and Parker were to farm and develop. On the whole evidence, therefore, we feel compelled to say that the question of partnership was for the jury.

2. Nor, in our opinion, was the evidence touching the sale of the tractor such as to command a directed verdict; for the effect of the ruling was to exclude failure of consideration and breaches of warranty from the case. It can be justified— assuming the partnership—only upon the view that failure of [7] consideration cannot be raised by one who accepts and

retains property sold, and that breaches of warranty after acceptance cannot be urged as a defense but only as a counterclaim. These propositions are correct (*Best Mfg. Co.* v. *Hutton,* 49 Mont. 78, 141 Pac. 653) ; but their application depends upon the existence of an unqualified or unconditional acceptance, and the acceptance here was not of that character. If it amounted to anything more than the final closure of an agreement to purchase the tractor, it was clearly subject to the warranty implied by law and to the guaranty expressed in the contract, which was to be for one year. This is the situation suggested by the evidence actually admitted. But here the appellant complains that the trial court excluded evidence which would have made a verdict by direction unthinkable. The evidence so offered discloses that after the purchase, or what is called the acceptance, the respondent made persistent efforts and repeated promises to rectify and make effective the machine, found to be seriously deficient; it tended to show that the so-called acceptance was regarded by purchaser and seller alike as a conditional one, and that the seller had waived the benefit of those terms of the contract in virtue of which the retention of the tractor would amount to an acceptance. It is manifest that a case made up of this excluded evidence and the evidence actually admitted would be an altogether different one from that presented in either *Berlin Machine Works* v. *Midland Coal & Lumber Co.,* 45 Mont. 390, 123 Pac. 396, or *Best Mfg. Co.* v. *Hutton, supra,* relied on as justifying the rulings. One of the reasons indicated for the exclusion of much of this evidence is that unless the appellant was a partner as alleged in the complaint, it was none of his business whether the consideration failed or breaches of warranty occurred. This view is logical and at the proper stage of the case was presentable to the jury by suitable instructions; but it could not authorize the exclusion of the evidence [8] because the appellant was entitled to deny the partnership and to plead the special defenses in his answer (Rev. Codes, sec. 6549; *O'Donnell* v. *City of Butte,* 4 Mont. 97, 119 Pac. 281),

leaving it to the jury to say whether either position had been maintained.

The order appealed from is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.